## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK FACILLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6470** |
| **MADERE & SONS TOWING, LLC** | **SECTION: "G"(3)** |

## ORDER

Before the Court are Plaintiff Mark Facille's ("Plaintiff") "Motion for New Trial"[1] and "Amended Motion for New Trial,"[2] wherein he moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a).  Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny both motions.

## I. Background

This lawsuit arises out of a personal injury allegedly suffered by Plaintiff  on October 3, 2013, while he was employed by Defendant Madere & Sons Towing, LLC ("Defendant") as a seaman.[3]  Plaintiff alleges that he slipped on a rubber mat while coming aboard the M/V MASTER DYLAN ("the vessel") from a barge and caught himself on a bulwark, causing injury to his right shoulder.[4]  Plaintiff alleges that Defendant was negligent under the Jones Act, and that the vessel was unseaworthy at the time of the incident. He seeks damages for physical and emotional pain and suffering,  as well as past and future loss of wages and fringe benefits.

---

[1] Rec. Doc. 87.

[2] Rec. Doc. 92.

[3] Rec. Doc. 1 at p. 2.

[4] Rec. Doc. 37-1 at p. 2; Rec. Doc. 38 at pp. 1–2.

A jury trial was held in this matter on December 13-14, 2014. The jury found that Plaintiff had proven by a preponderance of the evidence that Defendant was negligent under the Jones Act, but that such negligence was not a cause, in whole or in part, of the injury or damage to Plaintiff.[5] The jury also found that Plaintiff had proven by a preponderance of the evidence that the vessel was unseaworthy at the time of the incident, and that this unseaworthiness was a proximate cause of injury or damage to Plaintiff.[6] Additionally, the jury found that Plaintiff was contributorily negligent at the time of the incident, and that this contributory negligence was a proximate cause of his injuries.[7]

In determining damages, the jury assigned 10 percent of fault to Plaintiff. The jury awarded Plaintiff $98,000 in present, past, and future physical pain and suffering, and $42,000 in past wage loss and fringe benefits, for a total damages award of $140,000.[8] The jury did not award any damages for present, past, and future emotional and mental pain and suffering, or for future loss of wages and fringe benefits. On December 17, 2014, the Court entered judgment in favor of Plaintiff in the amount of $126,000.[9]

Plaintiff filed his original "Motion for New Trial" on January 14, 2015.[10] On January 20, 2015, Plaintiff filed the "Amended Motion for New Trial," which contains corrected citations to

---

[5] Rec. Doc. 80-4 at p. 1.

[6] *Id.* at p. 2.

[7] *Id.* at p. 3.

[8] *Id.* at p. 4.

[9] Rec. Doc. 83.

[10] Rec. Doc. 87.

the final trial transcript, but otherwise appears to be identical to the original motion.[11] On January

27, 2015, Defendant filed one memoranda in opposition to both motions.[12] Plaintiff did not file a

reply.

## II. Legal Standard

### A.    *Legal Standard on a Motion for a New Trial*

Rule 59 of the Federal Rules of Civil Procedure provides the standard governing motions for

a new trial.   The rule does not specify the precise grounds that are necessary to grant a new trial,

but merely states that "[a] new trial may be granted for any reason for which a new trial has

heretofore been granted in an action at law in federal court."[13] A new trial may be granted "if the

district court finds the verdict is against the weight of the evidence, the damages awarded are

excessive, the trial was unfair, or prejudicial error was committed in its course."[14]

In considering a Rule 59(a) motion based on evidentiary grounds, a court may weigh all the

evidence in the record and need not view it in the light most favorable to the non-movant.[15] While

a court should "respect the jury's collective wisdom and must not simply substitute its opinion for

the jury's," if a district judge is dissatisfied with the jury's verdict, she has both the right and also

the duty to set aside the verdict and order a new trial.[16] However, "[c]ourts do not grant new trials

---

[11] *See* Rec. Doc. 92 at p. 1 ("This Amended Motion simply corrects the transcript pages cited so as to reflect those of the final draft of the transcript.").

[12] Rec. Doc. 94.

[13] Fed. R. Civ. P. 59(a).

[14] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985) (citations omitted).

[15] *Id.* at 613.

[16] *Id.*

3

unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking new trial."[17] When all evidence is viewed in the light most favorable to the jury's verdict, the verdict must stand unless the evidence points so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary conclusion.[18]  "[A] motion for a new trial invokes the sound judicial discretion of the district judge."[19]

### III. Amended Motion for New Trial[20]

Plaintiff contends that a new trial is warranted because the jury erred by: finding him contributorily negligent; failing to award damages for emotional and mental pain and suffering; and failing to award damages for future loss of wages and fringe benefits.  Plaintiff also contends that he is entitled to a new trial due to "the prejudicial conduct of defense counsel throughout the presentation of the case to the jury," and due to "inconsistencies in the verdict form itself."[21]  The Court considers each proposed basis for a new trial in turn.

*A.*     ***Contributory negligence***

**1.**     **Parties' Arguments**

Plaintiff argues that there was no evidence of any fault on his part to support the jury's finding that he was 10% at fault.[22] According to Plaintiff, both Captain Eugene Pizani and Captain

---

[17] *Sibley v. Lemarie*, 184 F.3d 481, 487 (5th Cir. 1999), cert. denied, 529 U.S. 1019 (2000).

[18] *See Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986-87 (5th Cir.1989) (internal citations omitted).

[19] *Urti v. Transp. Commercial Corp.*, 479 F.2d 766, 768 (5th Cir. 1973).

[20] Rec. Doc. 92.

[21] Rec. Doc. 92-1 at p. 2.

[22] *Id.* at p. 3.

Edward Facille ("Captain Facille") "admitted that the mat that slipped out from under plaintiff was not secured to the deck; that there was no non-skid to prevent it from slipping; that there was no handrails [sic] in the area; and that the port winch leaked oil on the deck."[23] Plaintiff also submits that former mate John Paul Fruge also admitted that the winch leaked.[24] Additionally, Plaintiff avers, Captain Facille testified that Plaintiff was a good and safe worker who always followed instructions, and that "plaintiff did not do anything to cause or contribute to his accident."[25] Plaintiff cites *Urti v. Transport Commercial Corp.* to support his argument that Defendant has not met its burden to prove contributory negligence because no witnesses or evidence were introduced to support this defense.[26]

In response, Defendant contends that here, unlike in *Urti*, a witness—Edward Facille—did testify that Plaintiff was not holding onto the bow bitt in order to prevent any slipping when he stepped onto the deck of the M/V MASTER DYLAN.[27] Defendant avers that this testimony contradicts Plaintiff's own version of events; namely, that he held onto the bitt when he stepped onto the vessel.[28] Defendant also contends that this case is analogous to *Perricone v. Kansas City Southern Railway Co.*, where, according to Defendant, "the [Fifth Circuit], in reversing the grant of a new trial, noted, with regards to the contributory negligence issue, 'We may inquire whether there was *any* evidence supporting . . . the jury's finding . . . but we may not question the sufficiency

---

[23] *Id.* (citing Tr. 133-34, 138-40, 143-44, 166).

[24] *Id.* (citing Tr. 298, 303-06).

[25] *Id.* (citing Tr. 166-68).

[26] *Id.* at pp. 3–4 (citing *Urti v. Transport Commercial Corp.*, 479 F.2d 766 (5th Cir. 1973)).

[27] Rec. Doc. 94 at p. 3 (*citing* Tr. 172:23-174:3).

[28] *Id.*

of whatever evidence we do find."[29] Defendant additionally notes that Plaintiff's counsel failed to object to the jury verdict form or to the jury instructions on contributory negligence, and that Plaintiff has therefore "effectively waived this argument."[30]

### 2.      Law and Analysis

At issue is whether the jury's finding that Plaintiff was contributorily negligent in causing his own injury is against the weight of the evidence. In *Urti v. Transport Commercial Corp.*, a seaman who was injured by a defective rope during the performance of his duties aboard a vessel filed suit against the vessel owner under the general maritime law and the Jones Act.[31] The district court denied the plaintiff's motion for a new trial after the jury had determined that he was contributorily negligent to the extent of 50% of his damages.  The Fifth Circuit  reversed, finding that there was "an absolute absence of direct evidence of contributory negligence" in the record, and that the district court erred as a matter of law in denying a new trial. Specifically, the Fifth Circuit determined that the plaintiff  "neither selected, nor provided, nor rigged any of the equipment used," and that there was "not a scintilla of evidence in the record tending to show negligence" on the part of the plaintiff.[32]

In contrast, in *Perricone v. Kansas City Southern Railway Co.*, a railroad appealed from a judgment awarding damages to a motorist for injuries suffered when the bottom of his car struck the railroad's tracks at a crossing.[33] The trial judge had conditionally granted a new trial because he

---

[29] *Id.* at p. 4 (*citing Perricone v. Kansas City Southern Railway Co.,*  704 F.2d 1376, 1380 (5th Cir. 1983)).

[30] *Id.*

[31] *Urti v. Transport Commercial Corp.*, 479 F.2d 766 (5th Cir. 1973).

[32] *Id.* at 770.

[33] *Perricone v. Kansas City Southern Railway Co.,* 704 F.2d 1376 (5th Cir. 1983).

doubted whether there was sufficient evidence to support the jury's finding that the plaintiff was 50% responsible for his injuries.[34] The Fifth Circuit found that the jury may have declined to credit the plaintiff's testimony with respect to the speed at which he traveled over the railroad tracks, and that there was "abundant evidence that the jury could have credited that [plaintiff] failed to slow down at the railroad crossing despite the fact that it was marked with a sign and its incline was visible on this clear, dry day."[35] The Fifth Circuit found that the jury's finding of contributory negligence was not against the great weight of the evidence, and accordingly reversed the trial court's conditional grant of a new trial.[36]

The Court finds that this case is more analogous to *Perricone* than *Urti* because, here, there is evidence from which the jury could have found that Plaintiff was 10% contributorily negligent. Plaintiff testified that he was already holding onto the bitt when his left foot touched the mat and slipped.[37] However, Captain Facille, Plaintiff's brother and the captain of the vessel at the time of the incident, testified as follows:

> Well, when [Plaintiff] was coming down, he stepped off the barge onto the top of the bulwarks, Then when he went to slip, he grabbed the bitt, and I guess it drawed [sic] his shoulder or whatever it did to it. When he went to slip, he caught himself on the bitt, the front bitt that we got on the front of the boat, and then he went down.[38]

In finding that Plaintiff was contributorily negligent, the jury may well have credited Captain Facille's testimony that Plaintiff was not holding onto the bitt when he boarded the vessel, over

---

[34] *Id.* at 1381.

[35] *Id.*

[36] *Id.* at 1381-82.

[37] Testimony of Mark Facille, Trial Transcript, December 15, 2014, at 54:5-15.

[38] Testimony of Edward Facille, Trial Transcript, December 15, 2014, at 167:12-20; *see also* 173:25–174:3.

Plaintiff's contradictory testimony that he was holding onto the bitt at that time. The credibility of witnesses is for the jury to determine.[39]   Here, like in *Perricone*, the jury's finding of contributory negligence was not against the great weight of the evidence and, accordingly, Plaintiff is not entitled to a new trial on this basis.[40]

**B.**     ***Damages for emotional and mental pain and suffering***

    **1.**     **Parties' Arguments**

Plaintiff next contends that the jury erred by failing to award him an amount for past, present and future emotional and mental pain and suffering.[41] According to Plaintiff, "[t]he unrefuted evidence presented at trial was in favor of plaintiff suffering from emotional and mental pain and suffering."[42] Plaintiff asks: "[h]ow can an individual undergo a surgery, sit out of work for months, and yet suffer absolutely no emotional damages relating to same?"[43] Plaintiff contends that he testified that he is unable to enjoy hobbies and physical activities, such as working out and golf, that he used to.[44] He additionally points to his testimony that his injury had an impact on his relationships with his wife and his brother. Moreover, according to Plaintiff, the injury impacted his finances, and he described the possibility of losing his home and being unable to provide for his young daughter.[45] Plaintiff also points to the testimony of his wife, Ashlee Facille, who "testified they experienced

---

[39] *See Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969).

[40] *Id.* at pp. 3–4 (citing *Urti v. Transport Commercial Corp.*, 479 F.2d 766 (5th Cir. 1973)).

[41] Rec. Doc. 92-1 at p. 4.

[42] *Id.*

[43] *Id.*

[44] *Id.* at pp. 4–5 (citing Tr. 76, 123).

[45] *Id.* at p. 5 (citing Tr.76-77).

financial difficulties, including have [sic] to take out loans and not being able to provide for their daughter; and that they experienced marital strain. She also testified to the physical pain and difficulties [P]laintiff continues to experience."[46] According to Plaintiff, "there was absolutely no evidence to suggest that plaintiff did not suffer emotional and mental pain and suffering as a result of his accident and injury."[47] Plaintiff cites *Davis v. Becker & Associates* to support his argument that "[a]n award of no emotional damages is similar to the award of surgery yet no pain and suffering."[48] Plaintiff also contends that the verdict form is ambiguous because "the jury left the line on the verdict form for damages in this category blank. It is unusual for the jury to not fill in blanks on a verdict form. While one can infer the award is zero, one cannot be sure. Reasonable minds could infer that the jury inadvertently left the line for this award blank."[49]

In response, Defendant contends that this case is distinguishable from *Davis* because in that case, the plaintiff was awarded special damages, but no general damages whatsoever.[50] In contrast, Defendant submits, here, the jury specifically awarded Plaintiff $98,000 in general damages.[51] Defendant cites *Reichentfader v. Paccar, Inc.*, wherein another section of this district court denied a plaintiff's motion for a new trial, which was based on an argument that a jury's general damage award was inadequate and against the weight of the evidence. Defendant argues that the plaintiff in that case enjoyed an ideal recovery, was able to return to work relatively soon after surgery, and

---

[46] *Id.* (citing Tr. 195-98).

[47] *Id.*

[48] *Id.* (citing *Davis v. Becker & Associates*, 608 F.2d 621 (5th Cir. 1979)).

[49] *Id.* at p. 6.

[50] Rec. Doc. 94 at p. 6.

[51] *Id.*

9

"was also able to have the stabilizing hardware removed in an out-patient procedure."[52] Defendant contends that here, like in *Reichentfader*, the testimony of Plaintiff's treating physician "leaves no question that Plaintiff was adequately compensated in general damages."[53] According to Defendant, Dr. Guy testified that Plaintiff underwent arthroscopic surgery of the right shoulder on May 29, 2014, was released to light duty work on August 11, 2014, and had "excellent strength in ths shoulder, with no weakness, and had full range of motion in the shoulder but for 20 degrees of internal rotation" by September 24, 2014, the date which, according to Dr. Guy, Plaintiff reached maximum medical improvement.[54] Defendant also contends that Dr. Guy testified that he released Plaintiff to return to work, at full duty, with no restrictions.[55] According to Defendant, "[c]learly, the testimony of Dr. Guy substantiates the jury's finding of $98,000 for compensatory damages."[56]

## 2. Law and Analysis

The Fifth Circuit has instructed that "any amount awarded for pain and suffering depends to a great extent on the trial court's observation of the plaintiff and its subjective determination of the amount needed to achieve full compensation." [57] Each award for pain and suffering depends heavily on its own facts.[58]

Plaintiff argues that where, as here, a jury awards damages for physical pain and suffering,

---

[52] *Id.* at p. 5.

[53] *Id.* (citing Tr. 203:25-204:1).

[54] *Id.*

[55] *Id.*

[56] *Id.* at p. 6.

[57] *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 632 (5th Cir. 1983).

[58] *Allen v. Seacoast Products*, 623 F.2d 355, 364 (5th Cir. 1980).

the jury must also award damages for emotional or mental pain and suffering.[59] However, the only case relied upon by Plaintiff, *Davis v. Becker & Associates, Inc.*, does not stand for this proposition. In *Davis*, a seaman brought suit against his employer under the general maritime law and the Jones Act for injuries suffered to his spine and lower back in a December 1974 accident.[60] The jury found that the plaintiff's back was injured in the accident, and that the defendant was liable for the consequences thereof.[61] The jury also awarded the plaintiff 100 percent of his lost wages from the date of the accident through April 1979, two years after the trial, but nothing for his pain and suffering.[62] The plaintiff had incurred a prior injury to his back in 1970, requiring removal of the torn portion of a disc, and the defendant argued that the jury could have attributed the pain and suffering the plaintiff experienced after December 1975 to only the 1970 injury.[63] The Fifth Circuit determined, however, that the jury's verdict was inconsistent because testimony at trial from both the plaintiff himself and the surgeon who had treated him since 1970 indicated that the increasing pain and disability which the plaintiff had experienced after the 1975 accident came from either reinjury or reactivation of the 1970 injury.[64] The surgeon also testified that the plaintiff had undergone surgery in 1976, a process which necessarily entailed pain and suffering, because of the 1975 accident.[65] Although another doctor testified that the plaintiff's complaints were related only

---

[59] *See* Rec. Doc. 92-1 at p. 5 ("An award of no emotional damages is similar to the award of surgery yet no pain and suffering.").

[60] *Davis v. Becker & Associates, Inc.*, 608 F.2d 621, 622 (5th Cir. 1979).

[61] *Id.* at 623.

[62] *Id.* at 622-23.

[63] *Id.* at 622.

[64] *Id.* at 622-23.

[65] *Id.* at 623.

to his 1970 injury, the Fifth Circuit determined that, since the jury found the defendant liable for all of the consequences of the plaintiff's 1975 accident, the jury had to have accepted the surgeon's testimony relating the plaintiff's injury at issue to the 1975 accident.[66] Finding no substantial evidence that related the plaintiff's pain and suffering to the 1970 injury, and thus finding no view of the case which could make the jury's verdict consistent, the Fifth Circuit determined that the jury had  inconsistently awarded no damages for the plaintiff's pain and suffering and remanded for a new trial on damages.[67]  Crucially, the Fifth Circuit did not differentiate between physical pain and suffering and emotional or mental pain and suffering.

In the instant case, unlike in *Davis*, the jury did award Plaintiff damages for physical pain and suffering. At issue is whether the jury erred by failing to also award plaintiff an amount for emotional and mental pain and suffering.  The jury was instructed as follows:

> In determining compensatory damages, you should consider only the following elements, to the extent you find that Mr. Facille has established them by a preponderance of the evidence:
>
> 1.    past and future physical pain and suffering, including physical disability, impairment, and inconvenience, and the effect of Mr. Facille's injuries and inconvenience on the normal pursuits and pleasures of life;
>
> 2.    past and future mental anguish and feelings of economic insecurity caused by disability;
>
> 3.    income loss in the past; impairment of earning capacity or ability in the future, including impairment of Mr. Facille's earning capacity due to his physical condition; and
>
> 4.    value of fringe benefits.[68]

---

[66] *Id.*

[67] *Id.*

[68] Rec. Doc. 80-3, at p. 23  (Jury Charge No. 19).

The jury was additionally instructed that "some of these damages, such as mental or physical pain and suffering, are intangible things about which no evidence of value is required. In awarding these damages, you are not determining value, [and] instead determining what amount . . .  will fairly compensate Mr. Facille for his injuries."[69] Moreover, the jury was instructed that, if it found that Defendant was liable and that Plaintiff suffered damages, Plaintiff "may not recover for any item of damage that he could have avoided through reasonable effort."[70] Plaintiff did not object to these jury instructions at any point, despite having ample opportunity to do so.[71]

In declining to award Plaintiff damages for past, present and future emotional and mental suffering, the jury could have weighed the credibility of Plaintiff and his wife, Ashlee Facille, and determined that Plaintiff did not establish, by a preponderance of the evidence, his entitlement to compensatory damages for "past and future mental anguish and feelings of economic insecurity caused by disability." As stated above, the credibility of witnesses is for the jury to determine.[72] Moreover, Plaintiff has failed to cite any relevant legal authority, nor can the Court locate any, in support of his argument that a new trial is warranted when a jury awards damages for physical pain and suffering, but not for emotional pain and suffering. A jury has broad discretion in determining and awarding damages in personal injury actions,[73] and the Court cannot find that a new trial is warranted on these grounds.

Plaintiff also argues that a new trial is warranted because the jury failed to enter any number

---

[69] *Id.* at p. 24.

[70] *Id.* at p. 26 (Jury Charge No. 21).

[71] *See* Trial Transcript, December 16, 2014, at 356-79.

[72] *See Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969).

[73] *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1462 (5th Cir. 1987).

or notation on the verdict form with respect to this damages item, and "[r]easonable minds could infer that the jury inadvertently left the line for this award blank."[74] However, the Fifth Circuit has instructed that "because the Seventh Amendment requires this court to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible, we must attempt to reconcile the jury's findings by exegesis, if necessary, before we are free to disregard the jury's verdict and remand the case for a new trial."[75] Thus, only a finding that *"no view of the case makes the jury's answers consistent and that the inconsistency is such that the special verdict will support neither the judgment entered below nor any other judgment"* will we decide that the district court erred in denying a motion for new trial."[76] In this case, the jury awarded $98,000 to Plaintiff for physical pain and suffering, and $42,000 for past loss of wages and fringe benefits. Although the remaining lines in the damages section of the verdict form were left blank, the jury calculated a total damages award of $140,000.[77] Considering that the jury added $98,000 and $42,000, for a total of $140,000, it is clear that the jury intended to award zero damages to Plaintiff for emotional and mental suffering and future loss of wages and fringe benefits. Having determined that the verdict form is not inconsistent in this regard, the Court finds that a new trial is not warranted on these grounds.

---

[74] *Id.* at p. 6.

[75] *Arceneaux v. Mike Hooks, Inc.*, 15 F.3d 1079 (5th Cir. 1994) (citations and internal quotation marks omitted).

[76] *Id.*

[77] *See* Rec. Doc. 80-4 at p. 4.

14

C.    *Future loss of wages and fringe benefits*

1.    **Parties' Arguments**

Plaintiff argues that "the great weight of the evidence presented was in favor of plaintiff suffering from a future loss of wages and fringe benefits."[78] Plaintiff argues, without citing to the trial transcript, that he testified that following a release by Dr. Guy, he tried to return to work but experienced significant pain, discomfort and restrictions which necessitated a resumption of treatment. This treatment, he submits, consisted of injections to the shoulder as well as a restriction from work by Dr. Guy. Plaintiff also argues that his wife testified to the significant pain, discomfort and restrictions that Plaintiff continued to endure as a result of his shoulder injury. According to Plaintiff, "[t]he only way the jury could fail to give an award for future wage loss is if it concluded that plaintiff was fully capable of returning work."[79] The only evidence adduced at trial, he contends, was "the outdated testimony of Dr. Guy," who stated that he had released Plaintiff to return to work on September 24, 2014.[80] Plaintiff argues that he "clearly testified" that following Dr. Guy's deposition on October 13, 2014, "his treatment resumed and was ongoing. The jury was shown physical therapy records that revealed plaintiff was still having significant pain right before Dr. Guy released him."[81]

Plaintiff also points to his testimony that, since September, he had two injections, was prescribed pain medication, and was scheduled for an MRI.[82] He argues that, at the time of trial, he

---

[78] Rec. Doc. 92-1 at p. 6.

[79] *Id.*

[80] *Id.* at pp. 6–7.

[81] *Id.* at p. 7 (citing Tr. 71, 65-69, 122-23).

[82] *Id.* (citing Tr. 71).

was unable to work and had been restricted from working.[83] He also submits that he testified, without any objection, that he "was probably going to have surgery again."[84] Plaintiff also points to the testimony of Dr. Neil Gorman, who, according to Plaintiff, testified that Plaintiff would likely only earn between minimum wage and $10.00 per hour.[85] Dr. Randy Rice, Plaintiff's economic expert, testified to the amount of Plaintiff's future wage loss, and Defendants did not rebut either Gorman or Rice.[86] According to Plaintiff,  the jury's verdict in this regard is against the weight of the evidence and the failure to award plaintiff for his future loss of wages and fringe benefits is inadequate.

Additionally, Plaintiff contends that defense counsel improperly conducted a  *Daubert* hearing of Dr. Gorman while he was on the stand.[87] According to Plaintiff, defense counsel was allowed, over his objection, to question Dr. Gorman about previous cases where his testimony was allegedly limited or excluded, but, Plaintiff argues, "orders rendered in other cases simply have no relevance to this case."[88] Plaintiff submits that "[t]his undoubtedly confused the jury and caused prejudice to the plaintiff."[89]

In response, Defendant contends that, based on the testimony of Dr. Guy, the jury had more

---

[83] *Id.* (citing Tr. 71, 201).

[84] *Id.* (citing Tr. 70).

[85] *Id.* (citing Tr. 232-33).

[86] *Id.*

[87] *Id.* at p. 8.

[88] *Id.* (citing *McDowell v. Atlantic Sounding* Co., 2012 WL 1656262 (E.D. La. 2002) (Morgan, J.)).

[89] *Id.* at p. 9.

than ample evidence to find that Plaintiff has not suffered a future wage loss.[90] Defendant again argues that Dr. Guy released Plaintiff to work as a deckhand, with no restrictions.[91] Defendant submits that Plaintiff elicited no testimony from Dr. Guy subsequent to his October 13, 2014 deposition to indicate that Dr. Guy had changed his mind, "even though Plaintiff had resumed some measure of treatment over a month prior to trial."[92] According to Defendant, there was no expert testimony other than that of Dr. Guy regarding Plaintiff's ability to return to work at full duty, or in support of Plaintiff's contention that he might need a future surgery.[93]

2.    **Law and Analysis**

At issue is whether the jury's failure to award Plaintiff damages for future loss of wages and fringe benefits is against the weight of the evidence. Again, a jury has broad discretion in determining and awarding damages in personal injury actions.[94]

The only medical expert to testify at trial was Dr. Daniel Guy, Plaintiff's treating physician. Dr. Guy testified that Plaintiff underwent arthroscopic surgery of the right shoulder on May 29, 2014, was released to light duty work on August 11, 2014, and had "excellent strength in ths shoulder, with no weakness, and had full range of motion in the shoulder but for 20 degrees of internal rotation" by September 24, 2014—the date which, according to Dr. Guy, Plaintiff reached maximum medical improvement.[95] Dr. Guy testified that he released Plaintiff to return to work, at

---

[90] Rec. Doc. 94 at p. 6.

[91] *Id.* (citing Tr. 218:18-24).

[92] *Id.*

[93] *Id.* at pp. 6–7.

[94] *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1462 (5th Cir. 1987).

[95] Testimony of Daniel Guy, Trial Transcript, December 15, 2014, at 212.

full duty, with no restrictions.[96] According to Dr. Guy, Plaintiff "had excellent strength with no weakness," and diagnostic testing was negative. Although Plaintiff exhibited a "slight internal rotation deficit," Dr. Guy testified that this "[d]oes not actually imply that he can't perform his work. It just means, based on his range of motion, he had not recovered all of his range of motion."[97] Dr. Guy testified that he expected the range of motion issue to be permanent, but that Plaintiff can expect to have no problems related to that, and that "we released him to full work duty with no restrictions."[98] Plaintiff did not object to Dr. Guy's testimony; in fact, Dr. Guy was called, via video deposition, during Plaintiff's case-in-chief.

The only other testimony adduced at trial regarding ongoing medical treatments was Plaintiff's own testimony. Plaintiff testified as follows:

> Q:    Did you go back and see Dr. Guy after September 24th, when he released you?
>
> A:    I've been back to see Dr. Guy twice. The first time, he gave me a cortisone shot and some pain pills. Second time, he gave me another cortisone shot. Third time, he wasn't in the office, but I was hurting bad so another physician seen me, and she put me on no work no more. And I'm scheduled on the 23rd of this month to go back to get another MRI, and they are going to put dye inside my arm. And she told me it was a good possibility that I'm going to have surgery again.[99]

The Court sustained Defendant's hearsay objection to this testimony because Plaintiff provided the Court with no exception to the hearsay rule to counter Defendant's objection. The Court instructed the jury to disregard any testimony that Plaintiff may have said regarding what his doctor may have

---

[96] *Id.* at 213.

[97] *Id.*

[98] *Id.*

[99] Testimony of Mark Facille, Trial Transcript, December 15, 2014, at 71.

said to him.[100]

Plaintiff contends that the jury erroneously relied on the "outdated" testimony of Dr. Guy.[101] However, Plaintiff points to no other evidence in the record from any other medical expert. Crucially, it appears that the only testimony from which the jury could conclude that Dr. Guy's testimony was "outdated" was the testimony of Plaintiff himself, as set forth above.  In declining to award Plaintiff damages for future loss of wages and fringe benefits, the jury may well have credited Dr. Guy's testimony over Plaintiff's testimony with respect to his medical care. Again, the credibility of witnesses is for the jury to determine.[102] As stated above, Dr. Guy testified that Plaintiff had reached maximum medical improvement on September 24, 2014, and was released to full work duty with no restrictions. Considering that Plaintiff failed to present the jury with evidence other than his own self-serving testimony that Dr. Guy's testimony was "outdated," the Court finds that the jury's finding on this damages item was not against the great weight of the evidence. Accordingly, Plaintiff is not entitled to a new trial on this basis.

### D.   *Conduct of Defense Counsel*

#### 1.   **Parties' Arguments**

Plaintiff next contends that "[t]he entire trial was presented in a disruptive and disjointed manner due to the behavior and comments of defense counsel."[103] Plaintiff submits that the "plethora of errors made in front of the jury" includes:

---

[100] *See id.* at 75.

[101] *Id.* at pp. 6–7.

[102] *See Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969).

[103] Rec. Doc. 92-1 at p. 10.

> the debacle with the alleged letter that defense counsel questioned plaintiff about
> on cross examination. The letter was not an exhibit and had never been shown to
> plaintiff counsel beforehand. The effect of the letter was to insinuate that plaintiff
> counsel had represented plaintiff in 2011 in relation to a back injury that occurred
> prior to the subject accident. As it turned out, the letter had a typographical error and
> the facsimile text at the top revealed that it was sent in 2013.[104]

Plaintiff additionally contends that defense counsel overstepped the bounds of proper closing argument when he "repeatedly referred to plaintiff counsel and even plaintiff counsel's father and appeared to characterize plaintiff counsel in a prejudicial manner."[105] According to Plaintiff, "[t]he effect of defense counsel's comments regarding plaintiff counsel, although unintentional, was that plaintiff counsel was not his equal and was merely a rookie."[106] Further, Plaintiff contends that defense counsel injected his personal thoughts and used language such as - "I found;" "I remember;" "I thought;" "I think it was self-evident;" "I think anyone could have seen it;" and "I'm thinking" - that rose to the level of vouching and injection of attorney credibility and personal belief that is a basis for reversal of the jury verdict. Plaintiff also submits that defense counsel referred to Plaintiff's counsel as clever and using a smoke screen and, at one point stated "If you believe what Mr. Young is selling."[107] According to Plaintiff, defense counsel's closing statement was riddled with inappropriate comments based on his personal beliefs and his thoughts on the credibility of witnesses such as Dr. Gorman.[108]

In opposition, Defendant contends that "[a]lleged misconduct by counsel will not support

---

[104] *Id.* at pp. 10–11.

[105] *Id.* at p. 11.

[106] *Id.*

[107] *Id.* at p. 12 (citing Tr. 422).

[108] *Id.* (citing Tr. 397, 398, 404, 408, 409, 410, 430).

a motion for new trial when the conduct complained of was not prejudicial, or when any prejudice was cured by instructions of the Court."[109] According to Defendant, "[w]here the argument of counsel to the jury immediately meets with condemnation of the Federal District Court and adequate accompanying admonition to the jury, reversal is required only if the reviewing court remains of the opinion that prejudice did in fact result in that the district court abused its discretion in denying a new trial on that ground."[110] Here, Defendant submits, Plaintiff fails to argue that he was actually prejudiced by defense counsel's actions.[111]

Defendant also argues that Plaintiff's counsel objected during defense counsel's opening statement, and that this action disrupted the trial.[112] In response to Plaintiff's argument that Defendant sought a better position from which to observe Plaintiff's testimony, Defendant contends that "in no way does Plaintiff argue defense counsel moving to another table caused prejudice."[113] Turning to the letter which defense counsel attempted to use to cross-examine Plaintiff, Defendant submits that "the Court specifically instructed the jury to disregard the letter."[114] Defendant additionally argues, with respect to the statements made by defense counsel during closing argument, that "said comments were not misconduct, nor were they prejudicial."[115]

According to Defendant, when counsel for either party makes an improper statement during

---

[109] Rec. Doc. 94 at p. 7 (*citing Milos v. Sea-Land Service, inc.*, 478 Fed. Supp. 1019 (S.D.N.I. 1979), *aff'd* 622 F.2d 574, *cert. denied*, 101 S.Ct. 360).

[110] *Id.* at p. 8.

[111] *Id.*

[112] *Id.* (*citing* Tr. 23:10-16).

[113] *Id.*

[114] *Id.* (*citing* Tr. 110:22-111:17).

[115] *Id.*

trial, the court must determine whether the remark impaired a substantial right of the objecting party.[116] Defendant argues that the statements made by defense counsel did not impair any substantial right of Plaintiff, "as is clearly evidenced by Plaintiff's admission that '. . . the jury certainly formed *some* opinion (good, bad or otherwise) . . . .'"[117]

Finally, Defendant argues that Plaintiff has effectively waived a motion for new trial. According to Defendant:

> Throughout several of the bench conferences addressing points raised by Plaintiff in its Motion for New Trial, the Court asked if any parties had a motion. During defense counsel's closing statement, the Court raised the issue of whether a mistrial would be sought and asked how Plaintiff's counsel wished to proceed. The Court even went so far as to ask plaintiff's counsel if it had a motion, or whether a cautionary instruction was enough. Importantly, at no time did plaintiff's counsel move for a mistrial, even after raising objections regarding defense counsel's arguments. Plaintiff's counsel stayed silent, even though he was fully aware of the statements previously made.[118]

Defendant submits that "[n]ow, plaintiff simply does not like the verdict, and wants to effectively make a motion for a mistrial after the point of no return."[119]

### 2.   Law and Analysis

"A motion for new trial premised on improper arguments by counsel should only be granted when improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions."[120] "To justify a reversal based on improper comments of counsel, the conduct must

---

[116] *Id.* (*citing Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991)).

[117] *Id.*

[118] *Id.* at p. 9.

[119] *Id.*

[120] *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (*citing Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988) (internal quotation marks omitted)).

be such as to gravely impair the calm and dispassionate consideration of the case by the jury."[121] Therefore, closing argument must go far beyond the bounds of accepted advocacy before a court must grant a new trial.[122] As the Fifth Circuit has instructed, "[a] trial judge is generally better able than an appellate court to evaluate the prejudice flowing from improper jury arguments."[123] A new trial is warranted only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case.[124]

The Court finds *Baisden v. I'm Ready Productions, Inc.* instructive. In that case, defense counsel referred during trial to the plaintiff's marriage and family life, and plaintiff later moved for a new trial on the grounds that these statements were improper. The district court denied the motion, and the Fifth Circuit affirmed because although the plaintiff alleged prejudice in his post-trial motions, "he raised no objection to the statements at trial. [Plaintiff] has thus waived his objection to these statements, and this court need not consider them."[125] The Fifth Circuit additionally noted that the plaintiff made no effort to show how these statements would have affected the outcome at trial, and that none of the statements rise to the level of severity that would require a new trial to avoid a miscarriage of justice.[126]

---

[121] *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.*, 586 F. App'x 643, 649 (5th Cir. 2014) (unpublished) (*citing Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir.1985) (citation omitted)).

[122] *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284 (5th Cir. 1975).

[123] *Baisden*, 693 F.3d at 509 (*citing Calderera v. E. Airlines, Inc.*, 705 F.2d 778 (5th Cir. 1983)).

[124] *United States v. Jefferson*, 258 F.3d 405, 412 (5th Cir. 2001).

[125] *Id.* at 509 (*citing Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989) (where defendant failed to move for mistrial on basis of remarks, court would "not now entertain [defendant's] argument that [plaintiff's] trial tactics are grounds for a new trial").

[126] *Id.* (*citing McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 359–60 (9th Cir. 1996) (repeated references to manufacturer's wealth and power, plaintiff's hard-working nature and difficult financial circumstances, appeal to regional bias, attempt to coach witness with baseless objections, and repeated questions about inflammatory subjects not

In this case, Plaintiff has failed to demonstrate that defense counsel's conduct affected the outcome of the trial, or that they rose to the level of severity that would require a new trial to avoid a miscarriage of justice. First, Plaintiff contends that his presentation of his case to the jury was disrupted when, during counsel's direct examination of Plaintiff, defense counsel requested to sit behind plaintiff's table and advised the Court of his hearing problem.[127] However, Plaintiff did not object during trial to this request, and, thus, he has waived his objection at this time.[128]

Next, Plaintiff points to defense counsel's use of a letter to attempt to impeach Plaintiff during his testimony. Plaintiff contends that the letter was used to insinuate that plaintiff had retained counsel in 2011, but that the letter was actually written in 2013.[129] During trial, Plaintiff's counsel objected to the use of the letter because "there has not been a proper foundation to what this exhibit is or where it came from."[130] At a conference held at the bench, the Court admonished defense counsel for failing to include the letter in his pretrial list of exhibits and for improperly using extrinsic evidence to impeach a witness pursuant to Federal Rule of Evidence 609. The Court excused the jury panel from the courtroom for a short recess and, during that time, the Court informed the parties that the letter would be excluded. Plaintiff's counsel stated as follows:

> The bell has been rung, so to speak. The only instruction for use of a document, I would ask that I be allowed, is to instruct the jury that the facsimile transmission across the top of it is actually dated November - - November 13th, is it? May I see the document, please. This is a facsimile transmission, across the top, dated November 21, 2013, where it was sent from Champion Records, which is a record

---

sufficiently severe to warrant new trial)).

[127] Rec. Doc. 92-1 at p. 10.

[128] *See* Trial Transcript, December 15, 2014 at 38:13–41:3.

[129] *Id.* at pp. 10–11.

[130] Trial Transcript, December 15, 2014, at 96:25–97:2.

retrieval service, to OMS. And I'd ask that the jury be informed that this document was not sent until November 21, 2013 . . . .[131]

The Court offered to provide Plaintiff some leeway to address the letter during his redirect, and asked whether Plaintiff's counsel had any other suggestion for dealing with the issue. Crucially, Plaintiff's counsel was given the opportunity to propose a different course of action or different curative instruction, but did not.[132] As the record reflects, the Court stated that it would instruct the jury that they are to disregard the April 11, 2011 letter, and that the parties stipulated that the date on the letter was a typographical error.[133] Plaintiff's counsel did not object to this curative instruction or proposed course of action.  Accordingly, when the jury reentered the courtroom, the Court instructed them to disregard the letter, which would not be admitted into evidence and is not something that they were allowed to consider.[134] The Court also identified the fax transmittal date at the top of the letter, and told the jury that the letter was not written or sent until November 21, 2013.[135] Additionally, the Court informed the jury that the parties stipulated that the date of April 11, 2011 was a typographical error, and stated that the jury should disregard the letter altogether.[136] Plaintiff's counsel did not object to this instruction.  Accordingly, Plaintiff's original objection to the use of the letter was sustained, defense counsel immediately abandoned this line of questioning, and the Court expressly instructed the jury to disregard the letter altogether. Additionally, during

---

[131] *Id.* at 103.

[132] *See id.* at 110:5–6.

[133] *Id.* at 110.

[134] *Id.* at 110:23–111:18.

[135] *Id.*

[136] *Id.*

25

the charge conference on December 16, 2014, the Court asked whether Plaintiff wanted the parties' stipulation regarding the typographical error to be included in the list of stipulated facts which would be read to the jury.[137] Plaintiff declined the Court's invitation, stating "I think it's been addressed and so we're fine."[138] The letter was not mentioned during either party's closing statement. The Court finds, based on the foregoing, that Plaintiff has failed to establish that it was sufficiently prejudiced by defense counsel's use of the letter, and a new trial on this basis is not warranted.

Finally, Plaintiff argues that a new trial is warranted due to defense counsel's conduct during his closing argument. Plaintiff contends that defense counsel expressed his personal thoughts during his closing argument, referred to Plaintiff's counsel and plaintiff's counsels father, and referred to plaintiff's counsel as clever and using a smokescreen. Plaintiff alleges that, based on defense counsel's comments, the jury formed *some* opinion – "good, bad or otherwise" – about plaintiff's counsel and the trial process in general.[139]

The record reflects that, during defense counsel's closing argument, the Court conducted a bench conference in response to Plaintiff's objection to defense counsel's conduct.[140] During the bench conference, the Court and the parties discussed defense counsel's conduct, and the Court asked Plaintiff's counsel whether he had a motion.[141] Plaintiff did not move for any relief or make any motion at that time, but instead agreed that the Court's caution to defense counsel was

---

[137] Trial Transcript, December 16, 2014, at 376:16–377:23.

[138] *Id.* at 376:22.

[139] Rec. Doc. 92-1 at p. 12.

[140] *See* Trial Transcript, December 16, 2014, at 410–425.

[141] *Id.* at 416:23–417:1.

sufficient.[142] The Court then took a recess and, after the jury panel left the courtroom, the Court

again admonished defense counsel.[143] The Court asked whether Plaintiff's counsel had an objection

or a suggestion, at which point the following conversation took place:

| | |
|---|---|
| MR. YOUNG: | Maybe an instruction to the jury that it's inappropriate in closing to refer - - I didn't want to bring attention to it is my problem. This is like the record that was misconstrued. I now have to figure out how to deal with it. |
| THE COURT: | I was thinking that in the jury charge I could say, after you have heard the closing arguments of the attorneys, statements and arguments of the attorneys are not evidence and not instructions on the law. Any personal opinion any of the attorneys may have about the credibility of the witnesses or about each other - - |
| MR. YOUNG: | No, no, I wouldn't say that. I would say any personal opinions of the attorneys are not evidence.[144] |

The Court additionally stated that "[i]f Mr. Young has some motion for me to entertain or if you

have a motion for me to entertain, I'll do it."[145] Despite this opportunity to move for relief at that

time, neither party did so.

As stated above, closing argument must go far beyond the bounds of accepted advocacy

before a court must grant a new trial.[146] However, "[c]ourts do not grant new trials unless it is

reasonably clear that prejudicial error has crept into the record or that substantial justice has not

been done, and the burden of showing harmful error rests on the party seeking new trial."[147]  The

---

[142] *Id.* at 418:19–23.

[143] *Id.* at 421.

[144] *Id.* at 421:9–21.

[145] *Id.* at 423:24–25.

[146] *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284 (5th Cir. 1975).

[147] *Sibley v. Lemarie*, 184 F.3d 481, 487 (5th Cir. 1999), cert. denied, 529 U.S. 1019 (2000).

Court does not find, nor does Plaintiff allege, that defense counsel's statements and conduct during his closing argument exceeded the bounds of accepted advocacy.  Plaintiff points to no circuit authority suggesting that a comparable situation was held improper.  Moreover, Plaintiff does not argue that defense counsel's conduct irreparably prejudiced the jury verdict, or even that it caused the jury to form a negative impression of plaintiff's counsel.[148] As stated above, a new trial is warranted only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case.[149]  Plaintiff has not made this showing and, accordingly, a new trial is not warranted on this basis.

### E.    *Verdict Form*

#### 1.    **Parties' Arguments**

Finally, Plaintiffs submit that Defendant has requested in a separate motion[150] that the Court alter the judgment, which "lends further support for granting a new trial in this matter so any doubts or ambiguities as to the jury's intent can be resolved."[151] In opposition, Defendant contends that the jury made a clear finding that its Jones Act negligence did not cause Plaintiff's injury.[152] Defendant also argues that Plaintiff fails to argue that the jury "made a compromised verdict," and that "the jury understood what it was doing, and clearly decided any Jones Act negligence on the part of Defendant was not a cause of Plaintiff's injuries."[153]

---

[148] *See* Rec. Doc. 92-1 at p. 12.

[149] *United States v. Jefferson*, 258 F.3d 405, 412 (5th Cir. 2001).

[150] Rec. Doc. 86.

[151] Rec. Doc. 92-1 at p. 13 (*citing, e.g.*, *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667 (5th Cir. 2002)).

[152] Rec. Doc. 94 at p. 9.

[153] *Id.* at p. 10.

2.      **Law and Analysis**

As stated above, the Court is required under the Seventh Amendment to make a "concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible."[154] The Court must review the verdict and set it aside only if "[it] finds that there is no view of the case which makes the jury's answers consistent . . ."[155]   Additionally, a jury has broad discretion in determining and awarding damages in personal injury actions.[156]

In this case, the jury found that Defendant was negligent under the Jones Act, but that this negligence did not cause Plaintiff's injuries.[157] Instead, the jury found that the vessel was unseaworthy, and that this unseaworthiness was the cause of the injuries at issue.[158] The jury also found that Plaintiff was contributorily negligent, and assigned him 10% fault in causing his own injuries.[159]  Accordingly, the jury determined that the unseaworthiness of the vessel caused 90% of Plaintiff's injuries, Plaintiff's contributory negligence caused 10% of his injuries, and Defendant's negligence was not a cause, at all, of any of Plaintiff's injuries. The jury awarded a total of $140,000. Discounting 10%, as apportioned by the jury for Plaintiff's contributory negligence, Plaintiff is entitled to recover $126,000 in damages. Since the alleged inconsistencies in the verdict form can be reconciled, the Court finds that a new trial on this basis is unwarranted.

---

[154] *Alverez v. J. Ray McDermott*, 674 F.2d 1037, 1040 (5th Cir. 1982), *see also Wommack v. Durham Pecan, Co., Inc*., 715 F.2d 962, 968 (5th Cir. 1983).

[155] *Alverez*, 674 F.2d at 1040 (*quoting Griffin v. Matherene*, 471 F.2d 911, 915 (5th Cir. 1973)).

[156] *Book v. Nordrill, Inc*., 826 F.2d 1457, 1462 (5th Cir. 1987).

[157] Rec. Doc. 80-4 at p. 1.

[158] *Id.* at p. 2.

[159] *Id.* at p. 3.

## IV.  Original Motion for New Trial[160]

As stated above, Plaintiff filed his original "Motion for New Trial" on January 14, 2015.[161] On January 20, 2015, Plaintiff filed an "Amended Motion for New Trial," wherein he represents that "[t]his Amended Motion simply corrects the transcript pages cited so as to reflect those of the final draft of the transcript."[162] Considering that the original "Motion for New Trial" appears to be identical in substance to the "Amended Motion for New Trial," and for the reasons stated herein, the Court will deny the original "Motion for New Trial"[163] as moot.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Amended Motion for New Trial"[164] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's original "Motion for New Trial"[165] is **DENIED AS MOOT.**

**NEW ORLEANS, LOUISIANA**, this  21st day of August, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[160] Rec. Doc. 87.

[161] *Id.*

[162] Rec. Doc. 92 at p. 1.

[163] Rec. Doc. 87.

[164] Rec. Doc. 92.

[165] Rec. Doc. 87.